UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

DARLENE ESCALANTE,

    Plaintiff,

v().  Case No. 6:21-cv-2016-MAP

COMMISSIONER OF SOCIAL SECURITY

    Defendant.
_____/

## ORDER

Plaintiff seeks judicial review of the denial of her claim for a period of disability, disability insurance benefits (DIB), and Supplemental Security Income (SSI).[1] Plaintiff argues that the Administrative Law Judge (ALJ) committed reversible error by failing to properly evaluate the medical opinions of Yekatherine Rasmussen, M.D., and Gustavo Ruiz, M.D.  As the ALJ's decision was based on substantial evidence and employed proper legal standards, the Commissioner's decision is affirmed.

    *I.*    *Background*

Plaintiff, who was born in 1983, claimed disability beginning December 31, 2011 (Tr. 302-19). She was 28 years old on the alleged onset date.  Plaintiff obtained at least a high school education, and her past relevant work experience included work as a cafeteria attendant (Tr. 53-54, 70, 351-52).  Plaintiff alleged disability due to

---

[1] The parties have consented to my jurisdiction.  *See* 28 U.S.C. § 636(c).

diabetes, high anxiety, high blood pressure, tachycardia, insomnia, fibromyalgia, gastroparesis, and acid reflux (Tr. 350).

Given her alleged disability, Plaintiff filed an application for a period of disability, DIB, and SSI (Tr. 302-19). The Social Security Administration (SSA) denied Plaintiff's claims both initially and upon reconsideration (Tr. 111-41, 178-88). Plaintiff then requested an administrative hearing (Tr. 189-92). Per Plaintiff's request, the ALJ held a hearing at which Plaintiff appeared and testified (Tr. 81-110). Following the hearing, an ALJ issued an unfavorable decision finding Plaintiff not disabled and accordingly denied Plaintiff's claims for benefits (Tr. 142-65). Plaintiff sought review from the Appeals Council, which the Appeals Council granted (Tr. 252-54). Upon consideration, the Appeals Council vacated the ALJ's decision and issued a remand, directing the ALJ to ensure that the ALJ include in the record all material evidence that was timely submitted, to add the additional evidence in the electronic file to the record, and to consider the additional evidence (Tr. 166-70). On remand, the ALJ conducted a telephonic administrative hearing and subsequently issued an unfavorable decision finding Plaintiff not disabled and denying Plaintiff's claims for benefits (Tr. 12-75).

In rendering the administrative decision, the ALJ concluded that Plaintiff met the insured status requirements through December 31, 2016, and had not engaged in substantial gainful activity since December 31, 2011, the alleged onset date (Tr. 18).[2]

---

[2] As the ALJ indicated, Plaintiff's claim for disability benefits involved two periods of issue: November 31, 2011, through December 31, 2016, and October 8, 2018, through March 3,

After conducting a hearing and reviewing the evidence of record, the ALJ determined that Plaintiff had the following severe impairments: polyarthropathy/osteoarthritis, carpal tunnel syndrome status-post surgery, trigger finger, diabetes mellitus, gastroparesis, peripheral neuropathy, headache disorder, obesity, anxiety disorder, and depressive disorder (Tr. 18). Notwithstanding the noted impairments, the ALJ determined that Plaintiff did not have an impairment or combination of impairments that met or medically equaled one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1 (Tr. 19). The ALJ then concluded that Plaintiff retained a residual functional capacity (RFC) to perform less than the full range of sedentary work with the following limitations:

> The claimant can lift, carry, push, and pull 10 pounds occasionally and a negligible amount frequently. She can stand and/or walk two hours and sit six hours in an eight-hour workday with normal breaks. The claimant cannot climb ladders, ropes or scaffolds. The claimant can occasionally climb ramps and stairs. The claimant can occasionally stoop, kneel, crouch, crawl, or balance (on uneven terrain). The claimant can frequently reach, handle, and finger bilaterally. The claimant can tolerate occasional exposure to temperatures under 40 degrees and over 90 degrees Fahrenheit. The claimant cannot have any exposure to unprotected heights, dangerous moving machinery. She cannot operate a motor vehicle as part of her job duties. She can perform simple, one-to-four step work tasks, performed repetitively but not at a production-rate pace. Changes in work setting must be induced gradually. The claimant can have occasional interaction with the public and coworkers.

---

2021, the date of the decision (Tr. 24). The first period ended with the expiration of Plaintiff's insured status on December 31, 2016, since Plaintiff needed to establish that she became disabled prior to the expiration of her insured status for her DIB claim. *See* 20 C.F.R. §§ 404.315(a)(3), 404.320(b)(3), 404.621(c). The second period began as of the filing of Plaintiff's SSI application, as Plaintiff could not receive SSI benefits for any period prior to the month in which she submitted her application. *See* 20 C.F.R. § 416.501. Notwithstanding, the ALJ summarized and considered the relevant treatment records from the period from December 2016 through October 2018 (Tr. 24-25).

(Tr. 21).  In formulating Plaintiff's RFC, the ALJ considered Plaintiff's subjective complaints and determined that, although the evidence established the presence of underlying impairments that reasonably could be expected to produce the symptoms alleged, Plaintiff's statements as to the intensity, persistence, and limiting effects of her symptoms were not entirely consistent with the medical evidence and other evidence (Tr. 30).

Considering Plaintiff's noted impairments and the assessment of a vocational expert (VE), however, the ALJ determined that Plaintiff could not perform her past relevant work (Tr. 32).  Given Plaintiff's background and RFC, the VE testified that Plaintiff could perform other jobs existing in significant numbers in the national economy, such as a clerical assistant, a folder, and a sorter (Tr. 33, 70-71). Accordingly, based on Plaintiff's age, education, work experience, RFC, and the testimony of the VE, the ALJ found Plaintiff not disabled (Tr. 34).  Given the ALJ's finding, Plaintiff requested review from the Appeals Council, which the Appeals Council denied (Tr. 1-6, 299-301).  Plaintiff then timely filed a complaint with this Court (Doc. 1).  The case is now ripe for review under 42 U.S.C. §§ 405(g), 1383(c)(3).

## II. *Standard of Review*

To be entitled to benefits, a claimant must be disabled, meaning he or she must be unable to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months.  42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A).  A "physical or mental

impairment" is an impairment that results from anatomical, physiological, or psychological abnormalities, which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques. 42 U.S.C. §§ 423(d)(3), 1382c(a)(3)(D).

To regularize the adjudicative process, the SSA promulgated the detailed regulations currently in effect. These regulations establish a "sequential evaluation process" to determine whether a claimant is disabled. 20 C.F.R. §§ 404.1520, 416.920. If an individual is found disabled at any point in the sequential review, further inquiry is unnecessary. 20 C.F.R. §§ 404.1520(a), 416.920(a). Under this process, the ALJ must determine, in sequence, the following: whether the claimant is currently engaged in substantial gainful activity; whether the claimant has a severe impairment, *i.e.*, one that significantly limits the ability to perform work-related functions; whether the severe impairment meets or equals the medical criteria of 20 C.F.R. Part 404 Subpart P, Appendix 1; and whether the claimant can perform his or her past relevant work. 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4). If the claimant cannot perform the tasks required of his or her prior work, step five of the evaluation requires the ALJ to decide if the claimant can do other work in the national economy in view of his or her age, education, and work experience. 20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v). A claimant is entitled to benefits only if unable to perform other work. *Bowen v. Yuckert*, 482 U.S. 137, 140-42 (1987); 20 C.F.R. §§ 404.1520(g)(1), 416.920(g)(1).

A determination by the Commissioner that a claimant is not disabled must be upheld if it is supported by substantial evidence and comports with applicable legal standards. *See* 42 U.S.C. §§ 405(g), 1383(c)(3). "Substantial evidence is more than a

scintilla and is such relevant evidence as a reasonable person would accept as adequate to support a conclusion." *Winschel v. Comm'r of Soc. Sec.*, 631 F.3d 1176, 1178 (11th Cir. 2011) (citation and internal quotation marks omitted). While the court reviews the Commissioner's decision with deference to the factual findings, no such deference is given to the legal conclusions. *Ingram v. Comm'r of Soc. Sec.*, 496 F.3d 1253, 1260 (11th Cir. 2007) (citations omitted).

In reviewing the Commissioner's decision, the court may not reweigh the evidence or substitute its own judgment for that of the Commissioner, even if it finds that the evidence preponderates against the Commissioner's decision. *Mitchell v. Comm'r of Soc. Sec.*, 771 F.3d 780, 782 (11th Cir. 2014); *Winschel*, 631 F.3d at 1178 (citations omitted); *Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir. 1983). The Commissioner's failure to apply the correct law, or to give the reviewing court sufficient reasoning for determining that he or she has conducted the proper legal analysis, mandates reversal. *Ingram*, 496 F.3d at 1260 (citation omitted). The scope of review is thus limited to determining whether the findings of the Commissioner are supported by substantial evidence and whether the correct legal standards were applied. 42 U.S.C. § 405(g); *Wilson v. Barnhart*, 284 F.3d 1219, 1221 (11th Cir. 2002) (*per curiam*) (citations omitted).

    III.    *Discussion*

Plaintiff argues that the ALJ erred by failing to properly evaluate the medical opinions from Dr. Rasmussen, Plaintiff's treating physician, and Dr. Ruiz, Plaintiff's treating psychiatrist. Under the regulations, an ALJ will not defer or give any specific

evidentiary weight, including controlling weight, to any medical opinion or prior administrative finding, including from a claimant's medical source. 20 C.F.R. §§ 404.1520c(a), 416.920c(a). Rather, in assessing a medical opinion, an ALJ considers a variety of factors, including but not limited to whether an opinion is well-supported, whether an opinion is consistent with the record, the treatment relationship between the medical source and the claimant, and the area of the medical source's specialization. 20 C.F.R. §§ 404.1520c(c)(1)-(4), 416.920c(1)-(4). The primary factors an ALJ will consider when evaluating the persuasiveness of a medical opinion are supportability and consistency. 20 C.F.R. §§ 404.1520c(a) & (b)(2), 416.920c(a) & (b)(2). Specifically, the more a medical source presents objective medical evidence and supporting explanations to support the opinion, the more persuasive the medical opinion will be. 20 C.F.R. §§ 404.1520c(c)(1), 416.920c(c)(1). Further, the more consistent the medical opinion is with the evidence from other medical sources and nonmedical sources, the more persuasive the medical opinion will be. 20 C.F.R. §§ 404.1520c(c)(2), 416.920c(c)(2). And, in assessing the supportability and consistency of a medical opinion, the regulations provide that the ALJ need only explain the consideration of these factors on a source-by-source basis – the regulations do not require the ALJ to explain the consideration of each opinion from the same source. *See* 20 C.F.R. §§ 404.1520c(b)(1), 416.920c(b)(1). Beyond supportability and consistency, an ALJ may also consider the medical source's specialization and the relationship the medical source maintains with the claimant, including the length of the treatment relationship, the frequency of examinations, the purpose of the treatment

relationship, the extent of the treatment relationship, and whether the medical source examined the claimant, in addition to other factors. 20 C.F.R. §§ 404.1520c(c)(3)(i)-(v), (4), & (5), 416.920c(c)(3)(i)-(v), (4) & (5). While the ALJ must explain how he or she considered the supportability and consistency factors, the ALJ need not explain how he or she considered the other factors.[3] 20 C.F.R. §§ 404.1520c(b)(2), 416.920c(b)(2).

### A.   Dr. Rasmussen

Turning first to Dr. Rasmussen, Plaintiff argues that the ALJ erred in finding Dr. Rasmussen's opinions not fully persuasive, as (1) the treatment notes did not include overall normal physical examinations as the ALJ indicated, (2) the ALJ focused too heavily upon objective findings despite Dr. Rasmussen basing her decision partly upon Plaintiff's diagnosis of fibromyalgia, and (3) the ALJ overlooked evidence supporting Dr. Rasmussen's finding that Plaintiff could not perform repetitive grasping, handling, fingering, pushing, pulling, or reaching. Each of Plaintiff's arguments lack merit. Namely, in August 2019, Dr. Rasmussen completed a Medical Source Statement regarding Plaintiff's physical limitations (Tr. 1403-04). Dr. Rasmussen opined that Plaintiff could stand and walk less than one hour in an eight-hour workday, sit less than eight hours in an eight-hour workday, occasionally lift and carry less than 10 pounds in an eight-hour workday, and could not use her hands for

---

[3] The exception is when the record contains differing but equally persuasive medical opinions or prior administrative medical findings about the same issue. *See* 20 C.F.R. §§ 404.1520c(b)(3), 416.920c(b)(3).

pushing, pulling, reaching, overhead reaching, or simple grasping, handling, and fingering (Tr. 1403). According to Dr. Rasmussen, Plaintiff would need to take unscheduled breaks every 20 to 30 minutes, with each break lasting approximately 20 to 30 minutes each, before returning to work (Tr. 1404). Dr. Rasmussen concluded that Plaintiff would not need to elevate her legs with prolonged sitting but could never kneel, crawl, or climb stairs and only occasionally bend and squat (Tr. 1404). Dr. Rasmussen further found that Plaintiff should avoid unprotected heights, being around moving machinery, exposure to marked changes in temperature and humidity, driving automotive equipment, and exposure to dust, fumes, and gases (Tr. 1404). Dr. Rasmussen attributed Plaintiff's limitations to uncontrolled type 1 diabetes, diabetic neuropathy, acquired trigger finger, carpal tunnel syndrome, and fibromyalgia, which Dr. Rasmussen indicated could cause chronic fatigue, dizziness, and chronic pain (Tr. 1404).

In the decision, the ALJ discussed Dr. Rasmussen's treatment notes along with the other evidence of record (Tr. 22-32). The ALJ additionally considered Dr. Rasmussen's opinions regarding Plaintiff's physical limitations, stating:

> The undersigned finds the opinions of Dr. Rasmussen not fully persuasive. At the time she completed this medical source statement, she had only been treating the claimant for about four months. The opinion is not consistent with the doctor's treatment notes, which consistently note normal gait and overall normal physical examinations[] but for some upper extremity tenderness. While the medical evidence of record as a whole suggests a sedentary residual functional capacity with postural, manipulative, and environmental limitations, the claimant's examination findings do not suggest the claimant requires such frequent breaks. For example, September 2020 rheumatology treatment notes reflected a normal examination but for stiffness in the bilateral

>shoulders[;] tender MCP, PIP, and MTP joints bilaterally[;] and tenderness and decreased wrist range of motion. In January 2018, the claimant had normal range of motion and was intact neurovascularly, following CTS releases and trigger finger release. The claimant, as discussed above, responded well to appropriate treatment.

(Tr. 31) (internal citations omitted). Substantial evidence supports the ALJ's finding that Dr. Rasmussen's opinion was not fully persuasive.

As to the supportability factor, the ALJ pointed to the limited four-month treatment relationship with Dr. Rasmussen and, more importantly, to Dr. Rasmussen's treatment notes indicating mostly unremarkable findings upon examination (Tr. 31, 1277, 1312, 1316). As the ALJ discussed, Plaintiff began treatment with Dr. Rasmussen in April 2019, only four months prior to Dr. Rasmussen completing her Medical Source Statement (Tr. 1313-17, 1403-04). Upon examination in April 2019, Dr. Rasmussen noted that Plaintiff appeared healthy, well-nourished, and well-developed; was in no acute distress; ambulated normally; had full range of motion of her neck; had normal tone and motor strength; had normal movement of all extremities; had no malalignment; had no cyanosis; gait and station were normal; cranial nerves and sensation were grossly intact; and showed tenderness only in the muscles of the upper extremities (Tr. 1316). In May 2019, Plaintiff followed up with Dr. Rasmussen for her migraines and acquired trigger finger (Tr. 1309-12). Like the May 2019 appointment, Dr. Rasmussen noted that Plaintiff appeared healthy, well-nourished, and well-developed; was in no acute distress; and had normal gait (Tr. 1312). Later, in July 2019, Plaintiff presented to Dr. Rasmussen for a follow-up appointment regarding her migraines (Tr. 1275-77). On examination, Dr. Rasmussen

10

noted that Plaintiff appeared healthy, was in no acute distress, had no edema in her extremities, and presented with a normal gait (Tr. 1277). As the ALJ properly concluded, none of Dr. Rasmussen's treatment records supported the more significant limitations she identified in her Medical Source Statement, such as the need for frequent breaks.[4]

With respect to consistency, the ALJ appropriately found that Dr. Rasmussen's opinion as to additional limitations, such as a need for frequent breaks or a preclusion from Plaintiff's use of her hands for pushing, pulling, reaching, overhead reaching, or simple grasping, handling, and fingering, was inconsistent with the other evidence of record. For instance, the ALJ discussed the treatment records of Saeed Ahmad, M.D., which show that, from 2016 to 2019, Dr. Ahmad consistently noted unremarkable examination findings, except for an occasional finding of left ankle swelling, left middle finger tenderness, and a right arm cyst (Tr. 22-30, 556-62, 874-914, 1055-69, 1206, 1248-58). Notably, Dr. Ahmad repeatedly stated that Plaintiff showed full range of motion in her extremities with no deformities, edema, or erythema with no

---

[4] Plaintiff points to an October 2018 treatment note from Daniel Ullah, PA-C, finding that Plaintiff experienced abnormal sensation on the right and the left and edema of the left ankle due to a recent injury as indicative that Plaintiff did not demonstrate overall normal physical findings and as supportive of somewhat greater limitations in standing and walking than the ALJ suggested (Tr. 1325-28). Plaintiff fails to show how swelling due to a recent injury in October 2018 or sensation abnormalities that were not present during Dr. Rasmussen's treatment, which did not even begin until six months after PA-C Ullah made such notations, support either Dr. Rasmussen's opinion or greater limitations in the RFC. Further, the rest of the findings detailed by PA-C Ullah during the October 2018 examination were unremarkable, including normal gait and stance, normal motor strength, normal reflexes, and no pain or signs of discomfort (Tr. 1327), which supports the ALJ's finding that Plaintiff demonstrated overall normal physical findings.

tenderness in the back (*see, e.g.,* Tr. 556, 558, 560, 874, 876, 878, 880, 882, 886, 888, 890, 892, 894, 896, 898, 900, 902, 904, 906, 908, 911, 913).

Similarly, as the ALJ discussed, Scott Gordon, M.D., who performed Plaintiff's left carpal tunnel release in 2010, examined Plaintiff's wrists in November 2018 after Plaintiff reported that pain returned to her wrists (Tr. 22-25, 1096). On examination, Dr. Gordon noted that there were no areas of swelling or discoloration, good range of motion of wrist and fingers, no numbness or tingling, minimal tenderness, and no clicking or popping (Tr. 1096). According to Dr. Gordon, an X-ray of the left wrist showed an ulnar negative variance, no abnormalities of the lunate, good alignment of the carpal bones, and no other signs of arthritis or other pathology (Tr. 1096). Accordingly, as the ALJ discussed, Dr. Rasmussen's opinion as to more extreme limitations was not consistent with the other evidence of record.

Plaintiff next argues that the ALJ erred by focusing so heavily on objective examination findings because Dr. Rasmussen based her opinion, in part, on Plaintiff's diagnosis of fibromyalgia. Indeed, Dr. Rasmussen listed fibromyalgia as one of Plaintiff's diagnoses supporting the limitations set forth in the Medical Source Statement (Tr. 1404). Rather than support Dr. Rasmussen's noted limitations, however, the citation to Plaintiff's fibromyalgia diagnosis undercuts such limitations. As the ALJ highlighted, though Plaintiff was diagnosed with fibromyalgia, a tender point examination indicated only four positive points out of 18, which was insufficient to support a finding that Plaintiff's fibromyalgia constituted a severe impairment (Tr. 19, 1550-51). Dr. Rasmussen did not actually diagnose Plaintiff with fibromyalgia

12

based on examination or testing but rather relied upon Plaintiff's statement regarding a history of fibromyalgia (Tr. 1316). In fact, Dr. Rasmussen questioned Plaintiff's fibromyalgia diagnosis, stating:

> Get records from neurology and BH who, per [patient], has adjusted Fibromyalgia meds. Patient states she has been on some in the past that have not been effective. I am also curious to look [at] results of evaluation that was done to make this diagnosis. The patient seems to primarily have upper body pain on questioning and also exam contrary to what most fibromyalgia patients would complain of, which is diffuse body aches. I question how much of this relates to uncontrolled diabetes.

(Tr. 1317). Given the questions concerning Plaintiff's fibromyalgia diagnosis, the ALJ did not err in her consideration of objective medical evidence when considering the persuasiveness of Dr. Rasmussen's opinion.

Lastly, Plaintiff contends that the ALJ overlooked evidence that Plaintiff could not perform repetitive grasping, handling, fingering, pushing, pulling, or reaching. As the decision indicates, the ALJ extensively considered Plaintiff's hand and wrist limitations, including that Plaintiff experienced pain in her left hand and wrist, her diagnoses of carpal tunnel syndrome and neuropathy, her left middle trigger finger release surgery, her trigger finger condition in other fingers, tenderness at her joints, decreased flexion in her wrists, stiffness and numbness in the left thumb, and general complaints of pain in her arms and legs as well as muscle aches and fatigue (Tr. 18, 22-30, 522, 533, 542, 545, 548, 1345, 1550). The ALJ thus did not "overlook" such evidence but rather considered the evidence in limiting Plaintiff to (1) lifting, carrying, pushing, and pulling 10 pounds occasionally and a negligible amount frequently, and (2) only frequent reaching, handling, and fingering bilaterally (Tr. 21-30). To the

extent that Plaintiff asks me to reweigh such evidence or substitute my opinion for that of the ALJ, I cannot. If the ALJ's findings are based on the correct legal standards and are supported by substantial evidence – as they are here – the Commissioner's decision must be affirmed even if I would have reached a different conclusion. *See Mitchell*, 771 F.3d at 782; *Bloodsworth*, 703 F.2d at 1239. "And whatever the meaning of 'substantial' in other contexts, the threshold for such evidentiary sufficiency is not high." *Biestek v. Berryhill*, 139 S.Ct. 1148, 1154 (2019). To reiterate, I may not reweigh the evidence or substitute my own judgment for that of the ALJ, even if I find the evidence preponderates against the ALJ's decision. *See Mitchell*, 771 F.3d at 782; *Bloodsworth*, 703 F.2d at 1239. Since the ALJ provided substantial evidence in support of the finding that Dr. Rasmussen's opinion was not fully persuasive, remand is unwarranted.

    B.  Dr. Ruiz

 Plaintiff's next point of contention is that the ALJ failed to properly evaluate the opinion from Dr. Ruiz. Specifically, Plaintiff contends that the evidence contradicts the ALJ's assertion that (1) Plaintiff experienced mostly normal mental status examinations, (2) the ALJ should have gone beyond the mental status examinations to consider the symptoms that affect Plaintiff daily, and (3) the ALJ should not have drawn a negative inference from Plaintiff's reported daily activities. Plaintiff argues that Dr. Ruiz's findings were consistent with the objective mental status examinations, Plaintiff's reports of her day-to-day symptoms, and Plaintiff's

reported limited daily activities. As with Dr. Rasmussen's opinion, however, Plaintiff's arguments regarding Dr. Ruiz lack merit.

As the ALJ discussed, in August 2019, Dr. Ruiz submitted a Psychiatric Medical Source Statement (Tr. 1406-09). Dr. Ruiz identified Plaintiff's diagnoses as major depressive disorder, recurrent, moderate; panic disorder with agoraphobia; and anxiety disorder, unspecified, and noted that Plaintiff had received treatment at that facility since September 2017 (Tr. 1406). Dr. Ruiz indicated that Plaintiff experienced symptoms of depression, bipolar disorder, anxiety, and panic disorder, including depressed mood, diminished interest in almost all activities, sleep disturbance, decreased energy, difficulty concentrating or thinking, distractibility, restlessness, easily fatigued, irritability, and panic attacks followed by a persistent concern or worry about additional panic attacks or their consequences (Tr. 1405-06). Based on those impairments and symptoms, Dr. Ruiz opined that Plaintiff would experience mild limitations in her ability to understand, remember, or apply information; moderate limitations in her ability to interact with others and to concentrate, persist, or maintain pace; and marked limitations in her ability to adapt to manage herself (Tr. 1408). Dr. Ruiz attributed Plaintiff's difficulty adapting to changes to the severity of Plaintiff's symptoms (Tr. 1409). At the same time, Dr. Ruiz stated that medication management and psychotherapy were expected to diminish Plaintiff's symptoms (Tr. 1408).

In the decision, the ALJ discussed Dr. Ruiz's treatment notes along with the other evidence of record (Tr. 22-32). The ALJ also considered Dr. Ruiz's opinion, stating:

> The undersigned finds the opinions of Dr. Ruiz are not persuasive. His opinion that the claimant has marked adaptive functional limitations is not consistent with the claimant's self[-]report and third[-]party reports. Further, it is not consistent with the mostly normal mental status examinations. The claimant only required conservative treatment involving medication management. The claimant was noted to have a good capacity for her activities of daily living during her office visits, consistent with her reports to the agency and testimony.

(Tr. 32) (internal citations omitted). As the ALJ properly concluded, Dr. Ruiz's opinion was neither supported by nor consistent with the evidence of record, including his treatment notes.

For example, as the ALJ discussed, Dr. Ruiz's treatment notes consistently noted predominantly normal findings upon examination, including that Plaintiff was cooperative with good eye contact; had appropriate and clear speech and language; had an appropriate affect; had either an anxious or euthymic mood; denied hallucinations and delusions, with none observed; presented coherent, logical, organized, and relevant thrught process; had thought content appropriate for her age; was alert and oriented to person, place, and time; attention and concentration were adequate; had intact recent, remote, and immediate memory; appeared of average intelligence; had adequate impulse control; showed adequate insight and judgment; and did not evidence a risk of harm to herself or others (Tr. 1262-63, 1267-68, 1272-73, 1383, 1386, 1390, 1396, 1544). Notably, Dr. Ruiz repeatedly stated that Plaintiff's capacity to perform her activities of daily living was adequate (Tr. 1263, 1268, 1273, 1383, 1386, 1390, 1396, 1544, 1548). While Plaintiff reported persistent symptoms of nervousness, anxiousness, being worried, having trouble relaxing, restlessness,

irritability, being afraid, having little interest, depression, trouble sleeping, tiredness, poor appetite, and low self-esteem, she presented with unremarkable findings on examination and showed improvement through a course of medication management (Tr. 1260-74, 1381-97, 1542-49). In fact, Dr. Ruiz's more recent treatment records from January and April 2020, showed that, although Plaintiff reported symptoms of anxiety, she also reported improvement in her situation (Tr. 1542, 1546).

Further, as discussed in the ALJ's decision, the other evidence of record was inconsistent with and failed to support the limitations set forth by Dr. Ruiz. For instance, treatment notes from Vivian Chameco, M.D., and Linda Hill, ARNP, noted that Plaintiff's capacity to perform activities of daily living was either good or adequate (Tr. 924, 976, 992, 1044, 1052). Indeed, even Plaintiff and her daughter indicated that Plaintiff could handle her personal care, took care of her two sons, did not require reminders to tend to her personal needs and grooming, did not need reminders to take medication, prepared her own meals, handled laundry and cleaning the best she could, drove, had no problems getting along with others, shopped online and in stores, and could pay bills, count change, handle a savings account, and use a checkbook or money orders (Tr. 365-83). They also noted that Plaintiff's ability to handle changes in routine was okay (Tr. 371, 390), which is inconsistent with Dr. Ruiz's finding that Plaintiff experienced marked limitations in adaptive functioning. Although "it goes almost without saying that many people living with severe mental illness are capable of eating, putting on clothes in the morning, and purchasing basic necessities" and that none of those activities "say much about whether a person can function in a work

17

environment," the record in this case reveals that Plaintiff's reported ability to perform daily activities, as described by her treating sources, her daughter, and herself, shows that she was not as limited as alleged or as Dr. Ruiz opined. *See Simon v. Comm'r, Soc. Sec. Admin.*, 7 F.4th 1094, 1108 (11th Cir. 2021).

Though Plaintiff presented with an anxious or depressed mood and listed an array of symptoms during some appointments (Tr. 924, 970, 973, 976, 980, 983, 988, 992, 1262, 1272, 1386, 1390, 1396), the examination findings, reports of daily activities, and conservative treatment with medication management all support the ALJ's finding regarding Dr. Ruiz's opinion. In sum, therefore, the ALJ properly found that Dr. Ruiz's opinion was not persuasive. Neither Dr. Ruiz's treatment notes nor the other evidence of record support the extreme limitations set forth by Dr. Ruiz in his Psychiatric Medical Source Statement. As such, remand is unwarranted.

    IV.    *Conclusion*

For the foregoing reasons, the ALJ applied the correct legal standards, and the ALJ's decision is supported by substantial evidence. Accordingly, after consideration, it is hereby

ORDERED:

1. The decision of the Commissioner is AFFIRMED.

2. The Clerk is directed to enter final judgment in favor of the Commissioner and close the case.

DONE AND ORDERED in Tampa, Florida, on this 22nd day of March, 2023.

*Mark A. Pizzo*
MARK A. PIZZO
UNITED STATES MAGISTRATE JUDGE

cc: Counsel of Record